**MEMPHIS PUBLISHING COMPANY, d/b/a the Commercial Appeal, and Brian Feinberg, Petitioners/Appellants,**

**v.**

**SHELBY COUNTY HEALTH CARE CORPORATION; Gary S. Shorb, President of the Regional Medical Center at Memphis; and William N. Morris, Jr., Mayor of County of Shelby, Tennessee, Respondents/Appellees.**

Court of Appeals of Tennessee, Western Section, at Jackson.

May 25, 1990.

Application for Permission to Appeal Denied by Supreme Court Oct. 1, 1990.

Charles F. Newman and Kathryn E. Story of Burch, Porter & Johnson, Memphis, for petitioners/appellants.

Carroll C. Johnson, III of Johnson and Bateman, Memphis, and James C. Rawls and Michael O. Spivey of Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for respondents/appellees.

J. Minor Tait, Jr., Memphis, for Shelby County.

TOMLIN, Presiding Judge, Western Section.

Petitioner, Memphis Publishing Company, d/b/a *The Commercial Appeal*, (hereafter "MPC") filed a petition in the Chancery Court for Shelby County seeking access to certain personnel records of former employees of Shelby County Health Care Corporation (hereafter "SCHCC"), d/b/a The Regional Medical Center at Memphis, (hereafter "The Med") pursuant to the Tennessee Public Records Acts. Following a full hearing, the chancellor held that SCHCC was not a governmental entity and thus was not subject to the Tennessee Public Records Act. The appeal by MPC presents a single issue: Did the chancellor err in holding that SCHCC, d/b/a The Med,[1] was not subject to the Tennessee Public Records Act? We find no error and affirm.

The parties filed a "Stipulation of Facts," which reads as follows:

1. On May 16, 1989, petitioner Brian Feinberg, a reporter employed by petitioner *The Commercial Appeal,* requested the names of seventeen employees discharged on that date by the Regional Medical Center at Memphis (The Med). This request was denied. Mr. Feinberg also requested information regarding the reasons for the employees' discharges. This request was also denied. Access to records containing the above requested information was also denied.

2. By letter dated May 25, 1989, the petitioner, through counsel, made formal written demand upon The Med for access to records containing the above requested information. The Med denied the request by letter from counsel, dated June 2, 1989. The Med continues to refuse to provide access to these records.

3. By resolution adopted June 15, 1981, the Shelby County Commissioner dissolved the Hospital Authority "contingent upon the formation of a not for profit corporation to be named the Shelby County Health Care Corporation, a contract being executed between Shelby County Government and the SCHCC for operation of the [City of Memphis Hospital]."

4. The Shelby County Commissioners approved the creation of the SCHCC by resolution adopted June 15, 1981, incorporating the Charter of the SCHCC.

5. The SCHCC was established to operate the City of Memphis Hospital and for the other purposes described in the charter of this corporation, which was incorporated as a private, not-for-profit corporation.

6. The Charter of the SCHCC provides that members of the Board of Directors of SCHCC are to be appointed by

1. In this opinion we will refer to SCHCC and The Med interchangeably. The Regional Medical Center in Memphis is the trade name of SCHCC, for which "The Med" is a nickname.

the Mayor of Shelby County, subject to the approval of the Shelby County Board of Commissioners. Board appointments continue to be subject to the approval of the County Commission. The regular voting directors serve without pay.

7. Shelby County Government and the SCHCC entered into a contract effective July 1, 1981, whereby the County leased, for fifty years at an annual rate of $1.00, all of the real and personal property of the City of Memphis Hospital to the SCHCC for operation of the hospital.

8. The SCHCC contract requires that the meetings of the directors of the SCHCC be subject to T.C.A. § 8–4–101, *et seq.*, which provides that meetings of a governing body shall be open to the public. The aforementioned contract provides that any management contract entered into by SCHCC is subject to approval of the Shelby County Commission and the County has required redrafting certain provisions of such contracts as a condition of its approval in at least one case. No management contract is now employed by SCHCC.

9. According to the lease, all of the assets of SCHCC must be delivered to the County upon termination of the lease.

10. The lease agreement recites that one of its purposes is to "relieve County government from the burden of hospital operations," and states that "[i]t is understood that SCHCC is not an agency of County, nor any government agency." The lease also states that SCHCC shall have full and complete authority to do all things necessary to operate the CMH (City of Memphis Hospital) and to make such alternations [sic], additions and removal of the improvements of the leased premises as SCHCC may deem prudent and desirable within the approved budget.

11. By Charter provision, and pursuant to the provision of the Tennessee General Corporation Act, no part of the net earnings of SCHCC may inure to the benefit of any incorporator, director, or any other person or persons.

12. The annual budget of SCHCC is subject to approval by the County, and the SCHCC must submit annual financial reports and independent audits to the County.

13. Shelby County has appropriated $26.8 million dollars to fund the SCHCC's operation of The Med each year for the past six years. The County now appropriates monies from the County general fund to fund SCHCC's appropriation on a monthly basis.

14. The County's approval of the contract between the County and SCHCC was contingent upon the County's ability to use its federal revenue sharing funds to fund SCHCC. By resolution, the County appropriated its entire allotment of such funds for the SCHCC for fiscal year 1981–1982. By resolution adopted June 15, 1987, the County appropriated its entire remaining share of Federal Revenue Sharing Trust Fund balance of $178,153.00 to SCHCC.

15. The County has appropriated funds for capital improvements at The Med. Approximately $2.5 million dollars were appropriated for such capital improvements by resolution of the County Commission in fiscal year 1981–1982 and approximately $10 million dollars were so appointed in 1987–1988.

16. By resolution in February of 1982, the County made an equity contribution of over $2.8 million dollars to SCHCC. The County also provided an 8% term loan of $4.5 million dollars to SCHCC at this time. The County Commission authorized an additional loan to The Med of $3.5 million dollars at the interest rate of 10% in 1982. The debt on both of these loans was forgiven by resolution adopted on June 17, 1985. The County, by resolution has also approved revolving credit for SCHCC.

17. The real and personal property of the Regional Medical Center is owned by the County and leased to the SCHCC.

18. The real property, certain improvements thereon, and certain personal property of The Med were originally ac-

quired through expenditure of public funds.

At the conclusion of the hearing, the chancellor made written findings of fact and conclusions of law, which reads as follows:

The Shelby County Health Care Corporation (d/b/a the Regional Medical Center at Memphis) is not a governmental entity, or an arm or agency of the State of Tennessee, the County of Shelby, or any other governmental entity....

The Shelby County Health Care Corporation (d/b/a the Regional Medical Center at Memphis) is not subject to the Tennessee Public Records Act, T.C.A. § 10–7–101 *et seq. Cleveland Newspapers v. Bradley County Memorial Hospital Board of Directors,* 621 S.W.2d 763 (Tenn.App.1981); *Haire v. Shelby County Health Care Corp.,* Court of Appeals of Tennessee, Western Section, February 26, 1985.

Inasmuch as this case was tried by the court without the intervention of a jury, our review on appeal is *de novo* upon the record in the trial court, with a presumption of correctness as to its findings of fact. Absent an error of law, unless the evidence preponderates against any such findings, we must affirm. Rule 13(d), T.R. A.P.

MPC insists that The Med is a public hospital and therefore is subject to the provisions of Section 10–7–503(a). The Med, on the other hand, contends that it is operated as a private not-for-profit hospital, but one that serves a public purpose and is not subject to the Tennessee Public Records Act. Section 10–7–503(a) of that Act reads as follows:

**Records open to public inspection—Exceptions.**—(a) All state, county and municipal records and all records maintained by the Tennessee performing arts center management corporation shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, unless otherwise provided by state statutes.

At the hearing below, counsel for MPC agreed that the burden of proof was upon it to show that The Med qualified as a type of governmental entity to which the Tennessee Public Records Act would be applicable. Once that burden is met, the burden then shifts to The Med to show its justification for nondisclosure of the records sought as provided for in T.C.A. § 10–7–505(c). The Med contends that MPC failed to carry its burden. We agree. After reviewing this record and the applicable case law, we are of the opinion that insofar as the nature of the records being sought is concerned, SCHCC, d/b/a The Med, is a private, not-for-profit hospital and is not a governmental entity so as to subject these records to inspection by MPC.

MPC contends that the case of *Cleveland Newspapers, Inc. v. Bradley County Memorial Hospital Board of Directors,* 621 S.W.2d 763 (Tenn.App.1981) is dispositive of the issue in this case. While *Cleveland Newspapers* has several similarities to the case under consideration, we are of the opinion that it is not dispositive. In *Cleveland Newspapers,* the Bradley County Hospital was authorized to be constructed pursuant to a private act passed by the legislature. A subsequent private act provided for the operation, management and control of the hospital by a board of directors that was made up of members appointed by the County Court of Bradley County or the City Commissioners of the City of Cleveland, located in Bradley County. The second of the two private acts gave the board full authority and responsibility for the operation, management and control of the hospital. Among other things, it also provided that any profits from the operation of the hospital, after taking into account necessary operating funds, were to be paid over to the Trustee of Bradley County to retire the bonds issued in the first instance for the erection and equipping of the hospital.

The Eastern Section of this Court held that the payroll records of the hospital were subject to the Tennessee Public Records Act. In reaching this conclusion, the court determined that the hospital was

a governmental entity based upon the following facts in the record: (1) The hospital claimed governmental immunity in tort action; (2) the hospital had its genesis in the state legislature; (3) it was financed by public funds; (4) the board of directors of the hospital was appointed by the municipality and county and served without pay; (5) the hospital was a non-profit organization; and (6) the hospital administered to the sick in the community.

Notwithstanding the similarities, there also are several important distinguishing features which set it apart. First, the hospital in *Cleveland Newspapers* was a creature of the state legislature. The initial private act authorized Bradley County to issue $400,000 in revenue bonds for the erection and equipping of the hospital. A subsequent private act provided for the operation, management and control of the hospital by its Board of Directors. In the case under consideration, neither SCHCC nor The Med had its genesis in the General Assembly. SCHCC was incorporated pursuant to the Tennessee General Corporation Act as a private, not-for-profit corporation. A Memphis attorney served as its incorporator. The SCHCC functions in accordance with the provisions of the Tennessee General Corporation Act.

A second distinguishing feature is the fact that the Bradley County Hospital in *Cleveland Newspapers* claimed governmental immunity from suit in tort actions. In the case before us, when The Med came into existence under SCHCC, it never claimed governmental immunity. The legal counsel of The Med stated in her affidavit:

In defending tort suits alleging that The Regional Medical Center at Memphis is liable for damages, The Med does not assert, and does not believe that it is entitled to assert, that The Med is immune from liability because it is a governmental entity.... It is the belief of The Med that it is not a governmental entity....

At its meeting of July 2, 1981, just two days after the inception of the lease, the Board of Directors of SCHCC expressed its concern regarding the loss of governmental immunity. In this regard the minutes read as follows:

In the past, the hospital was deemed to be a governmental agency, and for that reason malpractice liability was limited to $20,000 per incident. There is now a question of interpretation as to whether the hospital is still a governmental agency and whether or not it will be necessary for the Board to obtain malpractice insurance in the private market. It is Mr. Lee's opinion that the hospital will not continue to enjoy the County exemption. Chairman Dick agreed with this.

The minutes reflected that the board also voted at that time to obtain malpractice insurance for the hospital.

Lastly, the *Cleveland Newspapers* court quoted in part what might be considered *dicta* in *Nashville Memorial Hospital, Inc. v. Binkley*, 534 S.W.2d 318 (Tenn.1976), wherein Justice Brock, speaking for the Supreme Court, gave a definition of "public hospital." The entire sentence, from which the *Cleveland Newspapers* quoted in part, reads as follows:

Whether or not a physician has a right to practice in a hospital depends upon whether the hospital be a public one, that is, an instrumentality of the state, founded and owned in the public interest, supported by public funds, and governed by those deriving their authority from the state, or is a private one founded and maintained by private persons, or a corporation, and which is not managed or controlled by the state or any of its subdivisions.

534 S.W.2d at 320.

Bradley County Hospital admitted it was a public hospital as characterized in the first part of the above-quoted sentence. While The Med has stated that it was being operated for a public purpose, it has always maintained that it is a private hospital. It is interesting to note in the characterization of a private hospital by the court in *Nashville Memorial Hospital* that it is described as one founded and maintained by a corporation, as well as one that is not managed or controlled by the state or any

of its subdivisions. Such is the case of the hospital operated by SCHCC.

The lease agreement between Shelby County and SCHCC in many ways contradicts the position by MPC, and on the other hand undergirds the chancellor's finding that SCHCC was not subject to the Public Records Act. First of all, it is readily apparent that the lease was a totally legal transaction between the county and the not-for-profit corporation under T.C.A. § 12–2–302. This is in no way controverted.

An examination of this lease brings to light many characteristics in support of SCHCC's position. The lease provides that "the County desires to accomplish the following: ... (f) to relieve County government from the burden of hospital operations." It states further that the county was of the opinion that this goal could "best be accomplished by leasing its City of Memphis Hospital ... to SCHCC for the purpose of SCHCC operating the hospital...."

The lease further provides that "[m]eetings of the Directors of SCHCC shall be subject to the provisions of Tennessee Code Annotated §§ 8–44–102 et seq." [the Open Meetings Act]. If the parties to the lease in any way would consider leasing the hospital premises to a governmental entity, this section would be totally redundant.

The lease makes it clear that it was not being entered into pursuant to the provisions of T.C.A. §§ 7–57–101, et seq., known as the "Metropolitan Hospital Authority Act." Had it been made under that act, SCHCC would clearly have been considered a governmental entity. The lease also provides that SCHCC is to indemnify and hold the county harmless from any obligational liability arising out of the operation of the hospital by SCHCC. Again, if SCHCC was a branch or agency of Shelby County, there would be no need for such an indemnity clause.

The lease also clearly states that as lessee, SCHCC does not assume any contractual obligations of either Shelby County or its predecessor, Memphis–Shelby County Health Care Authority, including the employment of any personnel. In addition, the lease provides that: SCHCC has full authority to do everything to operate the hospital and to make any changes in the leased premises; SCHCC may cancel the lease if certain arrangements are not made with the University of Tennessee Medical School to utilize the hospital for teaching purposes; SCHCC must carry fire and extended coverage insurance on buildings and content; SCHCC has the right to enter into a contract for the management of the hospital. The record also reflects that SCHCC did, coextensive with entering into the lease with Shelby County, with the County's consent, enter into a management agreement with American Medical Management Hospital Group, Inc. ("AMM"), an affiliate of Methodist Hospital of Memphis. Under SCHCC's agreement with AMM, SCHCC's right to hire and fire employees was delegated by it to AMM.

The Med, as operated by SCHCC, continues to serve a public function—the treatment of indigent medical patients in Shelby County. The record does reflect that Shelby County provides and has provided substantial funding for The Med since the inception of the lease, subject to the concurrence of the Board of County Commissioners. However, this funding is a *quid pro quo* for providing medical service to the indigent population of the county. In addition, the county mayor, subject to the concurrence of the Board of County Commissioners, appoints the Board of Directors of SCHCC, who serve without pay. Neither of these factors, together or independently, causes SCHCC to be considered a public or governmental entity. T.C.A. § 68–11–504 permits county funding of a corporation such as SCHCC without causing it to be converted into a public entity upon the receipt of county funds.

Though somewhat limited, there is legal authority in this state for the conclusion reached by the chancellor below. In February, 1982, the Shelby County Attorney requested of the Office of the Attorney General of the State of Tennessee an opinion as to whether or not employees of the SCHCC, who were involved in the operation

of The Med, could participate in the Shelby County Retirement Plan. The Attorney General rendered the following opinion:

It is the opinion of this office that these employees of the Shelby County Health Care Corporation may not participate in the Shelby County Retirement Plan, since they are not employees of a public entity.

In reaching such a conclusion, the Attorney General's opinion stated in part as follows:

The City of Memphis Hospital (also known as John Gaston Hospital) until 1981 was operated by the Memphis and Shelby County Hospital Authority, of which the Shelby County government was the creating municipality. This Authority was defined as a governmental entity under the Metropolitan Hospital Authority Act, T.C.A. § 7–57–101 et seq., and the hospital employees were allowed to participate in the county retirement plan. As of June 30, 1981, this authority was dissolved and the County leased the land, buildings, and other assets of the hospital to the Shelby County Health Care Corporation (SCHCC), a not-for-profit corporation organized under the laws of the State of Tennessee. The hospital employees became employees of SCHCC, which has since entered into a management contract for operation of the hospital.

. . . .

The City of Memphis Hospital, as operated by SCHCC, clearly continues to serve a public purpose. It receives substantial funding from Shelby County, as T.C.A. § 53–1404 authorizes, as well as through federal revenue sharing. These features, however, do not make the SCHCC or the hospital a governmental entity. It remains a not-for-profit corporation, legally similar to the many other such corporations in Shelby County. As stated in the opinion of this office issued on September 18, 1981 with regard to the creation of the SCHCC, "A nonprofit corporation is not considered an arm of county government."

. . . .

Obviously, no one ever conceived that the county would want to pay the retirement benefits of employees of a non-governmental corporation. Nor does it matter that SCHCC receives substantial funds from the county. To make that a crucial distinction would mean that the employees of the many worthwhile organizations to which the county contributes funds could be placed under the retirement system. Such was never the intent of those provisions. Thus despite the merits of the instant case, it is the opinion of this office that the hospital employees, now working for SCHCC, may not be included in the Shelby County Retirement Plan, since SCHCC is a not-for-profit corporation and not an arm of the government.

Opinions of the Attorney General, while not binding on this Court, are certainly persuasive. Whaley v. Holly Hills Memorial Park, Inc., 490 S.W.2d 532 (Tenn.App. 1972).

While we do not consider it to be the linchpin, we are of the opinion that an unpublished opinion of this Court, styled Haire v. Shelby County Health Care Corp., 10 T.A.M. 13–10 (Feb. 26, 1985), is also persuasive authority in regard to the issue under consideration. The material facts in Haire were as follows: Haire was employed by the City of Memphis Hospital prior to July 1, 1981, at a time when it was under the control and management of the Memphis and Shelby County Hospital Authority. At that time he was considered to be a county employee. On July 1, 1981, the authority was abolished, and control of the hospital was transferred to SCHCC.

Haire was discharged on August 14, 1981. He then pursued a grievance, utilizing the first three procedural steps found in the Employee Handbook that was in effect when he was hired as a county employee. Haire was advised that steps four and five, the County Hospital Authority Appeals Committee and the Shelby County Civil Service Merit Board, were no longer available to him since the Hospital Authority had been abolished as of July 1, 1981. Haire subsequently filed suit, alleging that

he was wrongfully denied access to his grievance appeal rights. He sought a declaratory judgment to the effect that the entire grievance procedure in the Employee Handbook should be applicable to his discharge case.

In affirming the trial court, this Court concluded that at the time he was discharged, plaintiff was no longer a county employee, but he was instead a private employee. Thus he was not entitled to have his case reviewed by the Shelby County Civil Service Merit Board. In so holding, we stated:

> Suffice it to say that plaintiff lost his status as a county employee when the county, by appropriate resolution, transferred the operation and management of the City of Memphis Hospital to the defendant, a private, not-for-profit corporation. This it clearly had a right to do. At the time of his dismissal, plaintiff's employment was private, not public. The employment policies in effect when the hospital was an arm of the county ended when the private, non-profit corporation took over the operation of the hospital.... This Court has neither the power nor the inclination to mandate that the Civil Service Board hear a grievance of a privately employed person, as the board's principal duty is to hear those cases of government employees.

*Id.* at 3.

Accordingly, we affirm the decree of the chancellor in all respects. Costs in this cause are taxed to MPC, for which execution may issue if necessary.

HIGHERS and FARMER, JJ., concur.